J-S32004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.A.U., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.A.U., FATHER | : : : : : : | |
| | : | No. 388 EDA 2020 |

Appeal from the Decree Entered November 19, 2019
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s):  No. A2019-0091

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 26, 2020**

Appellant, J.A.U. ("Father")[1], appeals from the decree entered on November 19, 2019, that involuntarily terminated his parental rights to his daughter, J.A.U., born April 2009 ("Child"), pursuant to the Adoption Act.[2] After careful review, we vacate the decree and remand for further proceedings consistent with this memorandum.

B.D. ("Mother") had two children with Father: Child, and a younger sibling, J.U., born October 2010.  N.T., 11/12/19, at 3-5.  Father was convicted of the murder of J.U. and is currently serving a twenty- to forty-year prison sentence.  *Id.* at 5.  At some time in 2017, Mother filed a custody complaint

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although Father filed his notice of appeal *pro se*, counsel was appointed on January 16, 2020, and has filed a brief on his behalf in this Court.

[2] 23 Pa.C.S. §§ 2101-2938.

in the Northampton County courthouse. *Id.* at 4-5. Father was served with the custody complaint, but did not respond; Mother was awarded sole legal and physical custody of Child. *Id.* at 5. Since the death of her younger child and Father's incarceration, Mother has married, and her current husband, J.E.C. ("Stepfather"), is providing parental care to Child. *Id.* at 5-6; *see also* Pet. For Involuntary Termination of Parental Rights, Ex. A. Stepfather desires to adopt Child. N.T., 11/12/19, at 6.

On October 18, 2019, Mother filed a petition seeking the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). On November 12, 2019, the same day as the termination hearing, Mother filed an affidavit of service, averring that Mother attempted service of the petition upon Father via first class and certified mail at SCI-Huntingdon. *See* Affidavit of Service, 11/12/19, at 1. The affidavit included United States Postal Service ("USPS") tracking information, which provided that the petition was delivered on November 1, 2019, to SCI-Huntingdon. *Id.*

The court held a hearing on the petition on November 12, 2019. At the hearing, Mother, represented by counsel, testified that Father has not made any attempts to perform parental duties or care for Child since birth. N.T., 11/12/19, at 4-5. Father was not represented by counsel and did not appear to testify on his own behalf. Following the hearings, on November 19, 2019,[3]

---

[3] The decree was initially entered on November 12, 2019; however, due to a spelling error, the final decree was entered on November 19, 2019.

the orphans' court entered a decree terminating Father's parental rights pursuant to Section 2511(a)(1), (2), (9), and (b) of the Adoption Act.

On November 22, 2019, Father filed, *pro se*, a document entitled "Petition to Set Aside, Strike, Open, or Vacate the Judgment Entered on November 12, 2019." *See* Petition, 11/22/19, at 1. Father averred that he had not been served with the petition to terminate his parental rights or any notice of the hearing. *Id.* at 1-3. Father averred that had he been aware of the petition, he would have requested counsel both for himself and to represent Child's best interests. *Id.* Father contended that he first received notice on November 16, 2019, when he was sent a copy of the court's November 12, 2019 decree. *Id.*

Father *pro se* timely filed his notice of appeal and statement of errors complained of on appeal. On January 16, 2020, the court appointed counsel to represent Father on appeal.

On appeal, Father raises the following issue for our review:

1. Did the [orphans' court] err in finding that [Father] had been properly served with the Petition seeking involuntary termination of his parental rights?

2. Did the [orphans' court] err in involuntarily terminating [Father's] parental rights without him having been properly served with the Petition requesting termination of his parental rights?

3. Was the [orphans' court's] entry of an Order of Court terminating [Father's] parental rights without the opportunity to be heard a violation of [Father's] due process rights?

4. Did the [orphans' court] err in failing to appoint counsel to represent [Father] and [Father's] interests at the hearing regarding the Petition to terminate his parental rights?

5. Did the [orphans' court] err in failing to appoint an attorney to represent [Child] at the hearing regarding the request to terminate [Father's] parental rights?

6. Did the [orphans' court] err in failing to appoint a guardian *ad litem* to represent [Child's] best interests at the hearing regarding the request to terminate [Father's] parental rights?

Father's Brief at 6 (suggested answer omitted).

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (*quoting In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (*quoting In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if

- 4 -

the record could also support the opposite result. ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa. Super. 2003).

***In re B.J.Z.***, 207 A.3d 914, 921 (Pa. Super. 2019).

Initially, we note that appellate briefs must materially conform to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. ***See*** Pa.R.A.P. Chapter 21. Pursuant to Pa.R.A.P. 2101, when a brief fails to conform to the Rules of Appellate Procedure and the defects are substantial, an appellate court may, in its discretion, quash or dismiss the appeal. ***See*** Pa.R.A.P. 2101. Specifically, as to the argument section of an appellate brief, Rule 2119(a) provides:

Rule 2119. Argument

**(a) General rule.—**The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

***Se*** Pa.R.A.P. 2119(a). Although Father's brief raises several issues in his statement of questions involved, he does not divide his argument into parts corresponding to those questions. However, because we may discern the issues Father seeks to raise, we do not quash his appeal.

Father's first, second, and third issues are intertwined and, accordingly, we address them together. Father contends that the court erred in finding that he was properly served with the termination petition, and, further, that the court erred in terminating Father's parental rights when he was not properly served with the petition. ***See*** Father's Brief at 14-17. Father

contends that "it is clear from his appeal that, had he been served with the Petition . . . he would have contested same." *Id.*

As in all civil cases, the petitioner in a termination matter bears the burden to prove proper service by its affirmative acts. *In re K.B.*, 763 A.2d 436, 439 (Pa. Super. 2000).

23 Pa.C.S. § 2513 provides, in relevant part:

**(a) Time.--**The court shall fix a time for hearing on a petition filed under section 2512 (relating to petition for involuntary termination) which shall be not less than ten days after filing of the petition.

**(b) Notice.--**At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require. A copy of the notice shall be given in the same manner to the other parent, putative father or parent or guardian of a minor parent whose rights are to be terminated. A putative father shall include one who has filed a claim of paternity as provided in section 5103 (relating to acknowledgment and claim of paternity) prior to the institution of proceedings . . .

23 Pa.C.S. § 2513.

With regard to the involuntary termination of parental rights, the Pennsylvania Code provides that notice of the hearing on the petition shall be given, in accordance with Rule 15.6, to the parent whose rights are sought to be terminated. 231 Pa. Code Rule 15.4(d). Rule 15.6 provides that,

(a) Notice to every person to be notified shall be by personal service, service at his or her residence on an adult member of the household, or by registered or certified mail to his or her last known address. If such service is unobtainable and the registered mail is returned undelivered, then:

(1) no further notice shall be required in proceedings under Rules 15.2 or 15.3, and

(2) in proceedings under Rules 15.4 and 15.5, further notice by publication or otherwise shall be given if required by general rule or special order of the local Orphans' Court. If, after reasonable investigation, the identity of a person to be notified is unknown, notice to him or her shall not be required.

231 Pa. Code Rule 15.6.

In support of his assertion that he was incorrectly served, Father argues that, pursuant to 231 Pa. Code Rule 403, "if a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent." 231 Pa. Code Rule 403; *see* Father's Brief at 17. Father contends that because no return receipt card was received, and because there was no testimony as to whether the first class mail was returned to the sender, Mother could not offer proof that he was served. *Id.* at 17-18. It is unclear, from the Rules of Civil Procedure, whether an involuntary termination is an action covered by those rules. *See*, *e.g.*, Pa.R.C.P. 1001-1042.12.

Regardless, Father points out, correctly, that the Affidavit of Service indicates that notice was addressed to him as follows:

[Father's Name]
c/o SCI Huntingdon
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652

*See* Affidavit of Service, 11/12/19, at 1. The USPS tracking information, included with the affidavit, indicates solely that the mail was delivered on November 1, 2019, and left with "an individual." *Id.* at 2.

We take judicial notice of the fact that the Pennsylvania Department of Corrections' website indicates that legal mail to inmates must be mailed in the following format:

Business Office —Inmate Name/Inmate Number
Address Line 1
City, State Zip Code

*See* Department of Corrections: Mail (Jul. 31, 2020), https://www.cor.pa.gov/Pages/Mail.aspx. Additionally, inmates may be served by sheriff, constable, or process server. *See* Department of Corrections: Frequently Asked Questions (Jul. 31, 2020), https://www.cor.pa.gov/Inmates/Pages/Frequently-Asked-Questions-(FAQ's).aspx. Based on the above, the mail addressed to Father did not include his inmate number. It is unclear whether Father would have received incorrectly addressed mail and, thus, it is equally unclear whether Mother met her burden of proving by affirmative acts that she served Father with notice of the hearing. *K.B.*, 763 A.2d at 439.

We note, briefly, *In re Adoption of J.N.F.*, 887 A.2d 775, 780 (Pa. Super. 2005), where the panel discussed the appointment of counsel for indigent parents in termination proceedings:

The appointment of counsel for indigent parents in termination proceedings is controlled by 23 Pa.C.S.A. § 2313(a.1), which states, in pertinent part, the following:

> (a.1) PARENT.—The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, ***upon petition of the parent***, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship.

(emphasis added).

***J.N.F.***, 887 A.2d at 780. The court emphasized that it is the parent's burden to request counsel. ***Id.*** Ultimately, the court concluded that the notice provided to Father regarding his responsibility to petition the court for appointment of counsel was sufficient, and that Father's failure to file a petition meant that the court did not abuse its discretion in failing to appoint counsel for Father. ***Id.*** However, in the instant case, as it is unclear whether Father actually received notice of the hearing and petition, he cannot be *per se* faulted for failing to request the appointment of counsel.

Similarly, if this was a contested termination, we would be required to remand for the appointment of counsel for Child, pursuant to ***In re Adoption of L.B.M.***, 161 A.3d 172, 174 (Pa. 2017) and ***In re T.S.***, 192 A.3d 1080, 1081 (Pa. 2018). However, it is unclear whether this is or is not a contested termination, as we cannot determine, from the record, whether Father received notice of the hearing.

Accordingly, we vacate the decree and remand the matter for the orphans' court to conduct an evidentiary hearing for the purpose of

determining whether Father was served with proper notice pursuant to 23 Pa.C.S. § 2513. If the orphans' court determines that Father was properly served, it may re-enter the termination decree as originally entered. If the orphans' court determines that Father was not properly served, the court is directed to schedule another termination hearing forthwith, appoint counsel for Child in accordance with **L.B.M.**, 161 A.3d at 174 and **T.S.**, 192 A.3d at 1081, and appoint counsel for Father.

Decree vacated. Case remanded. Jurisdiction relinquished.[4]

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/26/2020*

---

[4] Based upon our disposition of the matter, we need not discuss Father's remaining issues.